IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Civil No. 14-1441 |
| v. | ) | Criminal No. 09-180 |
| | ) | |
| BONNIE GARDNER | ) | |

## REPLY TO PETITIONER'S RESPONSE TO THE GOVERNMENT'S MOTION TO DISMISS PETITIONER'S MOTION TO VACATE

AND NOW comes the United States of America, through its counsel, David J. Hickton, United States Attorney for the Western District of Pennsylvania, and Brendan T. Conway, Assistant United States Attorney for said district, and respectfully submits its Reply to Petitioner's Response to the Government's Motion to Dismiss Petitioner's Motion to Vacate.

The Petitioner asks the Court to invalidate the portion of her plea agreement in which she knowingly and voluntarily waived her right to collaterally attack her conviction or sentence. She got the benefit of that plea agreement in terms of a below the Sentencing Guidelines range sentence, but she claims that enforcing the collateral waiver provision would work a miscarriage of justice. She is wrong. The only miscarriage of justice that could occur is if the government is forced to use its limited resources and taxpayer money to litigate the Petitioner's frivolous petition.

Waivers of appeal rights are enforceable, provided that they are (1) "entered into knowingly and voluntarily" and (2) do not "work a miscarriage of justice." United States v. Marby, 536 F.3d 231, 237 (3d Cir. 2008). Here, the Petitioner does not even attempt to argue that she did not enter the plea knowingly and voluntarily, and for good reason. She was an educated, mature and intelligent woman who understood, far more than the typical defendant, the consequences of her plea and the collateral waiver provision of her plea agreement. In any event, the Court "has an affirmative duty both to examine the knowing and voluntary nature of the waiver and to assure

itself that its enforcement works no miscarriage of justice, based on the record evidence before it." Marby, 536 F.3d at 237. Nothing from this record, however, suggests anything other than that the plea was knowingly and voluntarily made.

Neither the transcript of the change of plea hearing nor the written plea agreement is ambiguous in any way as to the collateral attack waiver.   The Petitioner agreed both through her signature on the written plea agreement and orally at the change of plea hearing to waive her right to attack collaterally her conviction and sentence.   The Court specifically went over with the defendant the collateral waiver language and she indicated that she understood that provision. (Exhibit A, p. 20).   The Court also found, based on the record then before it, that there was no basis to invalidate the waivers. (Id. p. 21).   The Court, after questioning the Petitioner, found that she was both competent and capable of entering an informed plea and that her guilty plea was knowingly and voluntarily made. (Exhibit A, p. 39).   Thus, the Petitioner cannot establish the first of the two prongs of the miscarriage of justice test.

With respect to whether enforcement of the waiver would work a miscarriage of justice, the United States Court of Appeals for the Third Circuit has "adopted a common sense approach" to this inquiry. Marby, 536 F.3d at 242. Rather than identifying particular circumstances that amount to a miscarriage of justice, the Third Circuit has suggested several relevant factors to consider, including "the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the Petitioner, the impact of correcting the error on the government, and the extent to which the Petitioner acquiesced in the result." Id. at 242-43. The Third Circuit also has suggested that a miscarriage of justice could arise when a Petitioner's attorney was "ineffective or coercive in negotiating the very plea agreement that contained the waiver." Id. at 243; see also United States v. Akbar, 181 Fed. Appx. 283, 286

2

(3d Cir. 2006) ("[I]t is possible for there to be a miscarriage of justice when plea proceedings were tainted by ineffective assistance of counsel."). However, "a waiver does not become unenforceable simply because a Petitioner claims ineffective assistance, but only if the record of the criminal proceeding revealed that the claim that the waiver was the result of ineffective assistance of counsel was meritorious." Akbar, 181 Fed. Appx. at 286-87 (internal quotations omitted).

Here, the Petitioner's § 2255 motion claims that her counsel was ineffective.   During the change of plea hearing, however, the Court explicitly asked the Petitioner if she was satisfied with the job that her attorney had done for her so far, and the Petitioner answered affirmatively. (Exhibit A, p. 6).   Moreover, as described more fully above, the Petitioner acknowledged during the change of plea hearing that she was waiving her right to file a motion under § 2255, and expressed no misunderstanding with regard to such waiver.   Additionally, she received exactly what she bargained for – the forty-two month sentence, which was significantly below the advisory sentencing guideline range.   Under these circumstances, the performance of her counsel was admirable, and his ability to negotiate an agreed upon sentence likely saved her years in prison. There is no basis, under these circumstances, for an ineffective assistance claim, and no cogent argument that enforcing the negotiated waiver would work a miscarriage of justice.

Perhaps recognizing the frivolous nature of any claim of miscarriage of justice, the Petitioner seeks to invalidate the collateral attack waiver based on an unpublished advisory opinion.   In United States v. Joseph, 2014 WL 2002280 (W.D. Pa. May 15, 2014), however, Judge Ambrose recently and cogently summarized the current status of the law with respect to whether § 2255 waivers, such as that contained in the Petitioner's plea agreement, remain valid and enforceable.

3

Generally, in this Circuit, waivers of the right to collateral attack are valid if entered into knowingly and voluntarily, and will divest the district court of jurisdiction over a collateral attack. United States v. Khattak, 273 F.3d 557, 558 (3d Cir. 2001); United States v. Goodson, 544 F.3d 529, 536 (3d Cir. 2008). Although the attorney ethics surrounding such waivers have recently been called into question, our Court of Appeals has since affirmed their enforceability as a legal matter. E.g., Muller v. Sauers, 523 Fed. Appx. 110, 111–12 (3d Cir. 2013). Khattak, which rejected an argument similar to that which Defendant now advances, remains in force in this Circuit generally, and in the collateral attack context specifically. See, e.g., United States v. Murray, 483 Fed. Appx. 690 (3d Cir. 2012). As the above-referenced Ethics Opinion acknowledges, the Advisory Committee's position is "aside from whether the courts might approve such waivers." Ethics Advisory Opinions are not binding on federal courts. Although our Court of Appeals may someday declare collateral attack waivers per se invalid in light of the ethical dilemmas they present, it has not done so to date. Cf. United States v. Grimes, 739 F.3d 125 (3d Cir. 2014). Absent guidance from our appellate court, I am unwilling to arrive at such a rule.

Judge McVerry recently concurred in this analysis. See United States v. Brownlee, Criminal No. 11-101, Document No. 113. But see Williams v. United States, 2014 WL 4060263 (W.D.Pa., Aug. 14, 2014) (holding that enforcement of collateral waiver would amount to miscarriage of justice) (Judge Conti).

The government asks this Court to adopt the well-reasoned approaches of Judge Ambrose and Judge McVerry, and reject the approach of Judge Conti.   The Supreme Court has repeatedly recognized that criminal defendants may waive "many of the most fundamental protections afforded by the Constitution." United States v. Mezzanatto, 513 U.S. 196, 201 (1995); see also Johnson v. Zerbst, 304 U.S. 458, 465 (1938).   Accordingly, there is no reason that a defendant cannot waive her statutory right to file a collateral attack alleging ineffective assistance of counsel. See United States v. Khattak, 273 F.3d 557, 561 (3d Cir. 2001) (noting that the constitution does not guarantee a criminal defendant the right to appeal).   Indeed, the Third Circuit Court of Appeals has held that waivers of appellate rights, entered into knowingly and voluntarily, are valid. Khattak, 273 F.3d at 560-62. Courts have seen no basis "to distinguish the enforceability of

a waiver of direct-appeal rights from a waiver of collateral-attack rights in [a] plea agreement." DeRoo v. United States, 223 F.3d 919, 923 (8th Cir. 2000). In fact, the Third Circuit and several other circuit courts have held that a waiver of the right to bring a collateral attack is enforceable. See United States v. Mabry, 536 F.3d 231, 237-38 (3d Cir. 2008); see also Sotirion v. United States, 617 F.3d 27, 33-39 (1st Cir. 2010); United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005); Chesney v. United States, 367 F.3d 1055, 1058 (8th Cir. 2004); DeRoo, 223 F.3d at 923; Garcia-Santos v. United States, 273 F.3d 506, 509 (2d Cir. 2001); United States v. Cockerham, 237 F.3d 1179, 1183 (10th Cir. 2001); Watson v. United States, 165 F.3d 486, 489 (6th Cir.1999); Jones v. United States, 167 F.3d 1142, 1145 (7th Cir. 1999); United States v. Wilkes, 20 F.3d 651, 653 (5th Cir. 1994); United States v. Abarca, 985 F.2d 1012, 1014 (9th Cir. 1993).

There are three considerations when the prosecution invokes an appellate/collateral challenge waiver: (1) what is the scope of the waiver and does it bar review of the issue pressed by the defendant; (2) whether the waiver was knowing and voluntary; and (3) whether enforcing the waiver would work a miscarriage of justice. United States v. Jackson, 523 F.3d 234, 243-44 (3d Cir. 2008); see also United States v. Goodson, 544 F.3d 529, 536 (3d Cir. 2008). In the Petitioner's case, as discussed above, all of those factors weigh in favor of enforcement of the waiver.

The miscarriage of justice exception to the enforcement of appellate/collateral challenge waivers is meant only for "egregious cases and is to be applied sparingly and without undue generosity." Sotirion, 617 F.3d at 36; see also United States v. Stabile, 633 F.3d 219, 246-47 (3d Cir. 2011); United States v. Wilson, 429 F.3d 455, 458-61 (3d Cir. 2005). As a result, the miscarriage of justice exception requires a strong showing of innocence or unfairness and is demanding enough to prevent defendants who have agreed to waive their right to appeal from successfully pursuing even obvious errors. See Sotirion, 617 F.3d at 36.

5

The Third Circuit has recognized these principles. See Khattak, 273 F.3d at 562-63. In Khattak, the Third Circuit embraced the reasoning of the First Circuit that a reviewing court should evaluate appellate waivers by considering such factors as "the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result." Id. at 563 (citing Teeter, 257 F.3d at 25-26).   The Third Circuit in Khattak also recognized that simply because an issue is meritorious is not sufficient to demonstrate a miscarriage of justice. Id. at 561-63. The court explained that "by waiving the right to appeal, a defendant necessarily waives the opportunity to challenge the sentence imposed, regardless of the merits." Id. at 561. The court then added the following statement from the Eleventh Circuit to its explanation: "A waiver of the right to appeal includes a waiver of the right to appeal difficult or debatable legal issues -- indeed, it includes a waiver of the right to appeal blatant error. Waiver would be nearly meaningless if it included only those appeals that border on the frivolous . . . .While it may appear unjust to allow criminal defendants to bargain away meritorious appeals, such is the necessary consequence of a system in which the right to appeal may be freely traded." Id. at 561-62 (quoting United States v. Howle, 166 F.3d 1166, 1169 (11th Cir. 1999)); see also United States v. Wenger, 58 F.3d 280, 282 (7th Cir. 1995) ("Defendants who appeal from sentences following plea agreements always point to unanticipated and unwelcome developments. . . . To say that a waiver of appeal is effective if and only if the defendant lacks grounds . . . is to say that waivers will not be honored.").

The Third Circuit has identified only a limited number of circumstances as a result of which an appellate/collateral challenge could proceed despite a waiver based upon the miscarriage of justice exception. The Third Circuit has indicated that such a waiver may not be enforced if the

defendant should have been permitted to withdraw his guilty plea, United States v. Wilson, 429 F.3d 455, 458 (3d Cir. 2005); if the defendant did not understand the plea agreement itself due to ineffective assistance of counsel, United States v. Shedrick, 493 F.3d 292, 298 (3d Cir. 2007); if counsel was ineffective in failing to timely file an appeal raising an issue explicitly exempted from the appellate waiver provision, Id.; or if the prosecution breached its own obligations under the plea agreement, United States v. Schwartz, 511 F.3d 403, 405 (3d Cir. 2008). Significantly, circuit courts have clarified that an ineffective assistance of counsel claim should not serve as an all-purpose detour around a knowing and voluntary waiver. See Mason v. United States, 211 F.3d 1065, 1069 (7th Cir. 2000); United States v. White, 307 F.3d 336, 341-44 (5th Cir. 2002). As the Fifth Circuit explained in United States v. White, "if all ineffective assistance of counsel claims were immune from waiver, any complaint about the process could be brought in a collateral attack by merely challenging the attorney's failure to achieve the desired result. A knowing and intelligent waiver should not be so easily evaded." White, 307 F.3d at 344; see also Sotirion, 617 F.3d at 39; United States v. Akbar, 181 Fed.Appx. 283, 286-87 (3d Cir. 2006) (unpublished) ("Akbar does not claim that the waiver itself was the product of ineffectiveness. Moreover, a waiver does not become unenforceable simply because a defendant claims . . . ineffective assistance, but only if the record of the criminal proceeding revealed that the claim that the waiver was the result of ineffective assistance of counsel was meritorious."). In short, the miscarriage of justice exception to the enforceability of appellate/collateral challenge waivers is applied sparingly and only under very limited circumstances not present here. See United States v. Pratt, 533 F.3d 34, 37 (1st Cir. 2008). The existence of even a clear otherwise reversible error is simply not enough by itself to meet the standard. United States v. Miliano, 480 F.3d 605, 608 (1st Cir. 2007); Sotirion, 617 F.3d at 38. In the Petitioner's case, there is no error, let alone sufficient grounds to

overcome the appellate/collateral challenge waiver that she expressly agreed to. It would not, therefore, be a miscarriage of justice to enforce the waiver and dismiss her motion. In fact, it would be unfair and unwise to fail to enforce the waiver and deprive the prosecution and the public of the benefit of the bargain.

To the extent that the Petitioner's claim is based on defense counsel's failure to convince her to accept a plea proposal discussed with the government prior to the Superseding Indictment, that claim is demonstrably frivolous based on the Court's colloquy with the Petitioner at the pretrial conference, a transcript of which is attached hereto as Exhibit B.  First, the Court questioned the Petitioner about her educational background and about other questions designed to determine her competency.   The bottom line from that questioning is that the defendant was not only competent, but a highly educated, intelligent and mature woman.   In addition, the transcript makes perfectly clear that the Petitioner not only knew about the plea discussions that occurred prior to the Superseding Indictment, but had made a knowing and voluntary decision not to pursue those discussions. (Exhibit B, p. 46-50).   Based on this transcript, it is patent that any claim based on ineffective assistance of counsel related to plea discussions is frivolous.

Moreover, the government, for several reasons, submits that Formal Opinion 2014-100, recently issued by the Pennsylvania Bar Association's Legal Ethics and Professional Responsibility Committee ("PBA") and relied upon by Judge Conti and the Petitioner is logically flawed and unpersuasive.   Federal prosecutors are required to comply with state rules of attorney conduct to the same extent as other similarly situated attorneys. 28 U.S.C. § 530B.   The District Court for the Western District of Pennsylvania has, with the exception of Rule 3.10, adopted the Pennsylvania Rules of Professional Conduct as the rules of conduct for attorneys practicing before that court.  See LCvR83.3(A)(2).   However, under binding regulations issued by the Attorney

General pursuant to § 530B, that statute "should not be construed in any way to alter federal, substantive, procedural or evidentiary law . . . ." 28 C.F.R. §77.1(b).   These regulations, in turn, were issued under express Congressional authority and are therefore binding.   See United States v. Mead Corp., 533 U.S. 218, 227 (2001) (holding that when "there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation . . . any ensuing regulation is binding in the courts unless procedurally defective, arbitrary or capricious in substance or manifestly contrary to the statute.") (quoting Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 843-44 (1984)).

Accordingly, these state rules cannot be construed to abrogate the plea agreements specifically authorized by Rule 11(b)(1)(N) of the Federal Rules of Criminal Procedure and approved by a federal court.   In short, § 530B does not give courts "the power, in the guise of regulating ethics, to impose strictures that are inconsistent with federal law." Stern v. U.S. Dist. Ct., 214 F.3d 4, 20 (1st Cir. 2000).   A contrary result would run afoul of the Supremacy Clause. Baylson v. Disciplinary Bd. of the Supreme Ct. of Pa., 975 F.2d 102, 108 (3d Cir. 1992); Almond v. U.S. Dist. Ct. for the Dist. of R.I., 852 F.Supp. 78, 87 (D.N.H. 1994) (labelling a state rule of attorney conduct an "ethical rule cannot obscure the fact it requires the creation of, and prosecutorial compliance with, a novel form of grand jury procedure."), aff'd in part, rev'd in part, Whitehouse v. U.S. Dist. Ct. for the Dist. of R.I., 53 F.3d 1349 (1st Cir. 1995).

The Petitioner's reliance on the PBA opinion and on the PBA's reliance on a number of state ethics opinions is unavailing.   These opinions do not mandate that the defendant's knowing and voluntary plea should be voided by this Court.   These opinions, in part or in whole, are based on three PBA model rules of professional conduct: Rule 1.7, which prohibits representation in the context of a conflict of interest; Rule 1.8(h)(1), which bars prospective agreements to limit liability

9

for malpractice; and Rule 8.4(a), which prohibits an attorney from providing an inducement to violate the rules of conduct.

First, these opinions are not law and are not binding on federal courts.   They are advisory only.   The website of the Disciplinary Board of the Supreme Court of Pennsylvania states:

> Ethics opinions issued by the Pennsylvania and Philadelphia Bar Associations are not binding on the Disciplinary Board.   Attorneys with ethical concerns should also consider consulting with an attorney experienced in matters involving attorney ethics and disciplinary procedures.   Appropriate steps should always be taken to document efforts to obtain counsel and advice as well as the results of those efforts. An attorney's efforts to obtain guidance and advice may be relevant during a future disciplinary inquiry by the Disciplinary Board.

Disciplinary Board of the Supreme Court of Pennsylvania Frequently Asked Questions, hhtp://www.padisciplinaryboard.org/attorneys/faqs/.   Additionally, the formal opinions of the Pennsylvania State Bar Association contain the following disclaimer:

> CAVEAT: THE FOREGOING OPINION IS ADVISORY ONLY AND IS NOT BINDING ON THE DISCIPLINARY BOARD OF THE SUPREME COURT OF PENNSYLVANIA OR ANY COURT.   THIS OPINION CARRIES ONLY SUCH WEIGHT AS AN APPROPRIATE REVIEWING AUTHORITY MAY CHOOSE TO GIVE IT.

Pennsylvania State Bar Association Formal Opinion 2014-100 at 8.

Further, federal law governs how federal courts interpret state rules of professional conduct. See, e.g., In re Congoleum Corp., 426 F.3d 675, 688 (3d Cir. 2005) (noting that state precedents about professional conduct should be consulted when they are compatible with federal law, but cannot be used to "balkanize federal law."); Sea-Roy Corp. v. Sunbelt Equipment & Rentals, Inc., 172 F.R.D. 179, 184 (M.D. N.C. 1997) ("Even though a federal court purportedly adopts state rules of professional conduct with respect to those attorneys practicing before it, it must use federal law to interpret and apply those rules."); In Re Disciplinary Proceedings Regarding John Doe, 876 F.Supp. 265, 268 (M.D. Fla. 1993) (noting that although opinions of the

Supreme Court of the state are highly persuasive, federal courts "must retain the right to interpret and apply the rules in the federal system."); <u>Grievance Comm'n for the S.D.N.Y. v. Simels</u>, 48 F.3d 640, 646 (2d Cir. 1995) (noting that requiring "a federal court to follow the various and often conflicting state court and bar association interpretations of a disciplinary rule, interpretations that may also contravene important federal policy concerns, threatens to balkanize federal law.").

The interpretations set forth in the ethical opinions do not in any way persuade that a federal court may not enforce a defendant's waiver of a claim of ineffective assistance of counsel. Model Rule 1.8(h)(1) states: "A lawyer shall not make an agreement prospectively limiting the lawyer's liability to a client for malpractice unless the client is independently represented in making the agreement."  A plain reading of the rule establishes that it does not apply to a defendant's waiver of a claim of ineffective assistance of counsel.  Whether a defendant may pursue a claim of ineffective assistance of counsel in order to vacate a conviction or sentence simply has no bearing on an attorney's liability to the defendant for malpractice.

A defendant's agreement with the government to waive their right to collateral review simply is not an agreement made by the defendant and the defendant's lawyer to limit the lawyer's civil liability for malpractice.  Further, even though a collateral rights waiver encompasses a claim of counsel's effectiveness, the inclusion of such a waiver in a plea agreement does not make the defense lawyer a party to the agreement.  Moreover, such a waiver does not foreclose a malpractice claim even if the defense attorney signed an agreement waiving ineffective assistance.

Some courts have held that an actual finding in a criminal proceeding that counsel provided effective assistance might collaterally estop a later claim of malpractice provided that malpractice and ineffective assistance standards are the same.  <u>See, e.g.</u>, <u>Glenn v. Aiken</u>, 409 Mass. 699, 569 N.E.2d 783, 785 (1991).  However, to the government's knowledge, no court has held that a

11

malpractice claim is estopped where the defendant agrees to waive the filing of a collateral attack

on their conviction.   In fact, the defendant's plea agreement does not preclude her from claiming

ineffective assistance where there is a miscarriage of justice as per the Court of Appeals for the

Third Circuit's standards for appellate and collateral waivers.

With respect to those opinions based on Rule 1.7(a)(2), there is no per se unconsentable

conflict of interest when an attorney advises a client about whether she should accept a plea

agreement containing a waiver of the right to collateral attack.   In pertinent part, Model Rule 1.7

states:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the
> representation involves a concurrent conflict of interest. A concurrent conflict of
> interest exists if: . . .

> (2) there is a significant risk that the representation of one or more clients will be
> materially limited by the lawyer's responsibilities to another client, a former client
> or a third person or by personal interest of the lawyer.

Under Rule 1.7(a)(2), a conflict of interest exists where the representation may be limited due to

the personal interest of the attorney.   Such a personal interest conflict could only exist where the

attorney actually knew he had provided ineffective representation and utterly failed to address it.

Despite all of the above, the PBA opinion concluded as follows:

> 1. It is a violation of PA RPC 1.7(a)(2) and 1.8(h)(1) for a criminal defense attorney
> to enter a plea agreement requiring the client to waive the right to file a
> post-conviction claim asserting IAC (ineffective assistance of counsel) at any time
> in the future.

> 2. It is a violation of PA RPC 8.4(a) and 8.4(d) for a prosecutor to propose a plea
> agreement requiring the defendant to waive the right to file a post-conviction claim
> asserting IAC at time in the future.

The PBA concluded that under Rule 1.7(a)(2), a defense lawyer has a personal interest conflict in

recommending such a plea.   The committee also concluded that a prosecutor has an ethical duty to

refrain from limiting claims of ineffective assistance because to do so would prejudice the administration of justice. According to the PBA opinion, such actions on the part of the prosecutor are also unethical because they run afoul of the proscription that one lawyer cannot assist another lawyer in violating the rules of professional conduct.

In reaching these conclusions, the committee relied on the opinions of other state bar associations. The PBA's reliance is woefully misplaced for the reasons set forth above. Model Rule 1.8(h)(1) and PA RPC 1.8(h)(1) are identical. As noted above, a defendant's agreement with the United States to waive their appellate and collateral rights is not an agreement made by the defendant and their lawyer to limit the latter's liability. This is true even if a claim of ineffective assistance falls within the ambit of the collateral waiver: the inclusion of such a waiver does not make defense counsel a party to the agreement. As noted, such a waiver does not foreclose a malpractice claim.

Equally unavailing is the PBA's conclusion that a prosecutor violates PA RPC 8.4 by even offering a plea agreement containing a collateral rights waiver. The committee's facile reasoning is set forth in full: "The Committee believes that a prosecutor has an ethical duty not to attempt to limit IAC claims because any effort to limit such claims is tantamount to engaging in conduct that is prejudicial to the administration of justice, which prohibited under PA RPC 8.4(d) . . . ."[1]  The committee does not explain how such conduct prejudices the administration of justice; it simply concludes that it does and leaves it there. The committee failed to acknowledge, let alone address, the fact that such waivers are specifically contemplated by Rule 11(b)(1)(N) of the

---

[1] The PBA opinion also includes the following language: "This opinion does not address the ethical propriety of a waiver of a right to IAC that arises out of the negotiation of a plea agreement itself[.]" (Exhibit A, p. 8)  The government does not know what to make of that language as it seems to run contrary to the rest of the opinion.  The language is, quite frankly, a mystery to the government as to what the PBA could possible mean by the quoted language.

Federal Rules of Criminal Procedure, which requires the district to ensure that a defendant understands the "terms of any plea agreement provision waiving the right to appeal or to collaterally attack the sentence."   Likewise, the committee also failed to reconcile its conclusion with the fact that this Court and other circuit courts of appeals have determined that such waivers are valid and enforceable provided the defendant knowingly and voluntarily entered into such a waiver.   See e.g. United States v. Khattak, 273 F.3d 557, 560-63 (3d Cir. 2001) (appellate waivers do not violate public policy); United States v. Mabry, 536 F.3d 231, 236-37 (3d Cir. 2008) (same).

To reiterate, it is the government's position that the offering of such a plea agreement is not prejudicial to the administration of justice where such conduct is lawful and not otherwise disruptive to the administration of justice.   There are several additional considerations concerning the opinion.   The composition of the panel of lawyers who issued the opinion is unknown. Furthermore, the process by which the committee's conclusion was reached is unascertainable. For these reasons, Formal Opinion 2014-100 is not dispositive and should play no role in this Court's decision.   In fact, the government is seeking reconsideration of the opinion.

The most troubling aspect of the PBA's opinion and Judge Conti's opinion is the notion that these collateral waivers are an affront to the administration of justice.   The PBA's conclusory view is belied by the opinion of the Court of Appeals for the Third Circuit and good old common sense.   First, in Mabry, the Third Circuit upheld and enforced an appellate waiver with regard to a claim of ineffective assistance of counsel.   The Court remarked that, "[n]oting the benefits of such waivers to the defendant, government and court system, we have refused to find waivers of appeal rights violative of public policy."   Mabry, 536 F.3d at 237.   The Court observed:

> In every plea agreement, the defendant waives the right to a jury trial, the right to confront and cross-examine witnesses, and the right against self-incrimination. . . . In addition, a

defendant can waive his rights against double jeopardy and his Sixth Amendment right to counsel.

Id. at 236 n.3 (citations omitted).   Accordingly, the Court concluded:

> While a defendant may be entitled to habeas relief if his attorney ineffectively fails to file a requested appeal . . . **if that same defendant has effectively waived his right to habeas, he cannot even bring such a claim unless the waiver fails to pass muster under an entirely different test: one that examines its knowing and voluntary nature and asks whether its enforcement would work a miscarriage of justice.**

Id. at 241 (emphasis added).   The Court declined to address Mabry's claim of ineffective assistance, as Mabry's claim was insubstantial. Id. at 243.

Second, as discussed above, a defendant may waive virtually any constitutional or statutory right as part of the plea bargaining process, so long as their waiver is knowing and voluntary.   See, e.g., United States v. Mezzanatto, 513 U.S. 196, 200-02 (1995) (explaining that a defendant may waive "many of the most fundamental protections afforded by the Constitution"); Ricketts v. Adamson, 483 U.S. 1, 9-10 (1987) (upholding plea agreement's waiver of right to raise double jeopardy defense).   This is true even when the defendant cannot contemplate at the time of their waiver every issue which may later arise and be foreclosed.   See, e.g., United States v. Ruiz, 536 U.S. 622, 629 (2002) ("[T]he law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply in general in the circumstances – even though the defendant may not know the *specific detailed* consequences of invoking it.") (emphasis in original); see also Iowa v. Tovar, 541 U.S. 77, 92 (2004).   Federal law envisions the use of waivers of appeal or of a collateral attack on a sentence.   See Fed. R. Crim. P. 11(b)(1)(N).   Thus, plea agreements in general and the use of

15

such waivers are seen as beneficial to the administration of justice.   Their use is **not** against public policy. <u>Mabry</u>, 536 F.3d at 237.

Third, the reality is, of course, that these waivers very much advance the administration of justice, which is why the government sought to include them in plea agreements in the first place. The vast majority of petitions pursuant to 18 U.S.C. § 2255 filed after a guilty plea pursuant to a plea agreement, are frivolous.   Plea colloquies in federal court are extensive proceedings in which various rights are discussed to ensure that the defendants knowingly and intelligently waive every conceivable right that a criminal defendant could have, and this plea colloquy was no different. During those colloquies, Courts, as the Court did here, uniformly ask defendants whether they are satisfied with their counsel, and the defendants indicate satisfaction with their counsel.   Given these protections, the instances in which a petitioner has a meritorious petition pursuant to 18 U.S.C. § 2255 after a plea of guilty are incredibly small.   In fact, counsel for the government knows of no such petitions that have been granted by a Court in this district following a guilty plea with a plea agreement even before these waivers came into common practice, and the Petitioner, Judge Conti, and the PBA failed to cite a single example.

So, the costs to the administration of justice, if there are any, are exceedingly low.   In contrast, the savings associated with the administration of justice are enormous.   Responding to or ruling on these petitions is an expensive and time consuming task.   The process often involves the following:

•   ordering expensive transcripts of proceedings held long ago, as exemplified in this very case, where the government has been required to order several transcripts before even addressing the merits of the petition despite the waiver;

•   combing through closed files, many times of attorneys who left the office long ago;

- trying to find agents, many of whom have since moved or retired; and

- trying to find evidence that may have been destroyed.

This case is an excellent example of at least some of those points.   In addition, many of the petitions are filed by criminal defendants with a lot of time on their hands, and who routinely file unintelligible pleadings.   This Petition is a notable exception to that rule.

As any law clerk or Judge who has had to deal with these petitions knows, these petitions have a serious detrimental impact on the administration of justice.   Judges and law clerks are exceedingly busy dealing with burgeoning dockets, and time taken away from those other cases to deal with these largely frivolous petitions is a drain on the administration of justice.

Unbelievably, nowhere in the PBA opinion or in Judge Conti's opinion is there any attempt to weigh the benefits to the administration of justice of these waivers.   The PBA and Judge Conti also make no effort to weigh those benefits against the supposed yet unidentified costs to the administration of justice, if there are any costs.   In fact, neither the PBA nor Judge Conti point to a single petition that was granted by a court after a federal guilty plea hearing.   Thus, it is unclear that there are any costs to the administration of justice related to these waivers.   If there are any costs, the PBA and Judge Conti did not identify them and wholly ignore the benefits to the administration of justice that these waivers provide.   They seem to be saying that it is just the resources of the government and the Court that are being saved here and saving government and Court resources does not benefit the administration of justice.   The government very much disagrees with that notion, and the government has no doubt that the taxpayers would concur in the government's assessment.   One must not forget that these are all defendants who, with the assistance of counsel and after a lengthy colloquy with the Court, pleaded guilty.

Thus, the PBA's opinion, like Judge Conti's opinion, is unpersuasive.   Its foundation is a facile determination that these waivers are somehow an affront to the administration of justice. Yet, there is no analysis of the costs of these waivers to the administration of justice, nor is there an analysis of the extraordinary benefits to the administration of justice provided by these waivers. The foundation of the opinions is therefore flawed and ought to be rejected by the Court because these waiver provisions actually advance the administration of justice through judicial economy.

Defendants waive a bevy of Constitutional and other rights when they plead guilty. Waiving the right to collaterally attack a conviction on ineffective assistance of counsel grounds is among the least important of those rights because it is the least likely to provide any relief to the defendants.   Certainly, an appeal is exponentially more likely to provide relief to a defendant than a petition pursuant to 28 U.S.C. § 2255, but the Court of Appeals for the Third Circuit has made it perfectly clear that waivers of appeal rights are valid.   It therefore follows that there is no bar, ethical or otherwise, to counsel for the government demanding a waiver of that right in exchange for the benefits in the plea agreement.

And let's not forget that the defendants get benefits from these plea agreements, and this case is an excellent example.   The Petitioner avoided a likely decade long sentence that may have otherwise applied.   Part of the government's calculus in proposing such a plea agreement was finality, and the government has already not gotten the benefit of its bargain because it now has drafted two pleadings and paid for transcripts.   The Petitioner received the benefit of the plea agreement, and the government should also get at least some of the benefits of the bargain in terms of enforcement of the Petitioner's knowing and voluntary waiver.

WHEREFORE, for the reasons set forth above, the government respectfully requests that the Court grant the government's Motion to Dismiss the Petition, and determine that a certificate of appealability should not be issued.

Respectfully submitted,

DAVID J. HICKTON
United States Attorney


/s/ Brendan T. Conway
BRENDAN T. CONWAY
Assistant U.S. Attorney
U.S. Post Office and Courthouse
700 Grant Street
Suite 4000
Pittsburgh, PA 15219
412/894-7348
412/894-7311 (facsimile)
Brendan.Conway@usdoj.gov
PA ID No. 78726


Cc:    Bonnie Gardner
       Register No. 33388-068
       FPC Alderson
       Glen Ray Road, Box A
       Alderson, WV   24910

19